IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| J & J SPORTS PRODUCTIONS, INC., | ) | CASE NO. 4:14CV960 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | KATHLEEN B. BURKE |
| | ) | |
| ISRAEL ZAMBRANO, et al., | ) | |
| | ) | |
| Defendants. | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |

Plaintiff J & J Sports Productions, Inc. ("J&J") filed an Amended Complaint alleging that Defendants Israel Zambrano, Zama, LLC ("Zama") and Serafina, LLC ("Serafina")[1] intercepted and exhibited a televised boxing match (the "Program") at three Los Gallos Mexican Restaurant locations in violation of 47 U.S.C. § 605 (the Communications Act of 1934, as amended) and 47 U.S.C. § 605 (the Cable & Television Consumer Protection and Competition Act of 1992, as amended).  J&J seeks damages pursuant to those statutes.  J& J also alleges a conversion claim under Ohio law.  J&J filed a motion for summary judgment pursuant to Fed. R. Civ. Pro. 56.  Doc. 27.  Defendants filed an opposition brief (Doc. 28) and J&J filed a brief in reply (Doc. 29). For the reasons explained below, there is no genuine issue of material fact and J&J's Motion for Summary Judgment is granted.

## I.  Background[2]

---

[1] Israel Zambrano is an officer of Zama and Serafina.  Doc. 15, pp. 3, ¶7; 8, ¶34.  Zambrano filed for bankruptcy; proceedings against him have been stayed pending the bankruptcy's resolution.  *See* Docs.  23; 24.  This Order, therefore, only applies to the corporate Defendants, Zama and Serafina.

[2] The facts are taken from documents submitted in support of J&J's motion for summary judgment and are undisputed.

J&J purchased exclusive rights to exhibit the television broadcast of the May 5, 2012, fight between Floyd Mayweather and Miguel Cotto in certain commercial locations.  Doc. 27-4, pp.1-2, ¶3; Doc. 27-5, p. 1.  J&J's exclusive right to exhibit the Program in commercial locations expressly includes "theaters, bars, clubs, lounges, restaurants and the like."  Doc. 27-5, p. 1.  J&J's business is based on sub-licensing its exclusive commercial broadcast rights for a fee. Doc. 27-4, pp.1-2, ¶3.

Zama and Serafina (collectively, "Defendants") operate three Los Gallos Mexican Restaurants in the Northeast Ohio area.  Zama operates one restaurant located in Struthers, Ohio, and Serafina operates two—one located in Youngstown, Ohio, and one located in Bedford, Ohio.  Doc. 15, p. 4, ¶14; p.8, ¶34; Doc. 27, p. 2, ¶4-5.  J&J did not license the Program to Defendants for commercial exhibition at any of the Los Gallos Mexican Restaurants at issue in the present case.  Doc.  27-4, p. 2, ¶3; p. 3, ¶7.

On May 5, 2012, two private investigators hired by J&J visited the three restaurants and witnessed portions of the Program being shown on multiple televisions at each location.  Private investigator Anthony Bentley visited Zama's restaurant in Struthers, purchased a drink, and observed part of the Program displayed on two televisions above an upstairs bar and on one television in a private party room.  Doc. 27-1, p. 1.  He also observed that the capacity of the restaurant was 375 people and that approximately 175 people were present at the time.  Doc. 27-1, p. 2.  Mr. Bentley also visited Serafina's restaurant in Youngstown, where he saw the Program on three televisions in several locations throughout the restaurant.  Doc. 27-2, p. 1.  Mr. Bentley observed that the capacity of the restaurant was between 350-500 people and that about 175 people were present at the time.  Doc. 27-2, p. 2.  Finally, David Kacarab, another private investigator, visited Serafina's Bedford restaurant, where he purchased a drink and observed

2

twelve rounds of a preliminary fight included in the Program on several televisions. Doc. 27-3, p. 1. Mr. Kacarab observed that the capacity of the restaurant was about 100 people and that about 25 people were present at the time. Doc. 27-3, p. 2. Both private investigators had ample opportunity to watch portions of the Program at each restaurant and were readily able to observe numerous details from the Program, including the identities of the fighters, the colors of their trunks, and, in one instance, the commentator of the fight. Docs. 27-1; 27-2; 27-3. At no time did the private investigators pay a cover charge, pay increased prices for food or drinks, or notice any advertising for showing the Program at the restaurants. *Id.*

Thereafter, J&J filed an Amended Complaint alleging that Defendants unlawfully intercepted and exhibited the Program at their restaurants in violation of 47 U.S.C. §§ 553, 605. Doc. 15, p. 5, ¶¶19, 20, 21; p. 6, ¶¶26, 26. J&J also asserted a conversion claim under Ohio law. Doc. 15, pp. 7-8.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (internal quotations omitted).

Once the moving party has met its burden, the non-moving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257 (1986). "[A] party opposing a properly

supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 256; *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48 (emphasis in original). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. at 248.

### III. Analysis

#### A. Liability under 47 U.S.C. §§ 553 and 605

47 U.S.C. §§ 553 and 605 were "designed, in part, to deal with 'a problem which [wa]s increasingly plaguing the cable industry—the theft of cable service.'" *Cablevision of Michigan, Inc. v. Sports Palace, Inc.*, 27 F.3d 566, at *2 (6th Cir. 1994) (unpublished) (quoting H.R.Rep No. 934, 98th Cong., 2d Sess. 83 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4655, 4720)). 47 U.S.C. § 553(a)(1) states, "[n]o person shall intercept or receive … any communications service offered over a cable system, unless specifically authorized to do so by a cable operator." Additionally, 47 U.S.C. §605(a) provides, in relevant part:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person …. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part

4

> thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Courts have consistently held that § 553 and § 605 are strict liability standards, and "willfulness" need not be shown in order to establish liability. *J & J Sports Productions, Inc. v. Santiago*, No. 1:13-cv-2641, 2014 WL 5091737, at *3 (N.D. Ohio Oct. 9, 2014).

J&J submitted documents in support of its motion for summary judgment in order to establish Defendants' liability.  J&J provided a licensing agreement showing that it had exclusive sublicensing rights to the Program for various types of commercial establishments, including bars and restaurants.  Doc. 27-5 (licensing agreement). Defendants do not dispute J&J's evidence that the Program was shown at all three Los Gallos Mexican Restaurants on May 5, 2012.  Docs. 27-1 (Bentley's Struthers affidavit); 27-2 (Bentley's Youngstown affidavit); 27-3 (Kacarab's Bedford affidavit). J&J states, and Defendants do not dispute, that Defendants did not have authorization from J&J to show the Program.  Doc. 27-4, p. 2, ¶3 (Affidavit of J&J's President, Joseph Gagliardi, stating that J&J did not sublicense the Program to Defendants).

Defendants do not contest J&J's characterization of the law, nor do they raise any genuine issues of material fact sufficient to defeat summary judgment.  Although Defendants have made several factual assertions in their brief before the Court, they have not supported their assertions by "citing to particular parts of materials in the record" as required by Rule 56(c)(1)(A).  For example, Defendants have asserted that the showing of the Program was a private party event, not a public showing.  Doc. 28, p. 2.  Because it was a private party event, they state that their use of the Program was a reasonable use of a private residential subscription and, therefore, not actionable.  Doc. 28, p. 2.  Defendants, however, cite no evidence to support their assertion that the showings at issue were private.  To the contrary, evidence in the record clearly shows that the Program was readily viewable by members of the general public, as

5

private investigators were able to enter each restaurant and watch the Program for significant periods of time. Although Mr. Bentley's affidavit states that the Struthers restaurant showed the Program on a television in a private party room, the Program was readily watchable by the investigator and was also shown on two televisions above the upstairs bar. Doc. 27-1, p. 1. Furthermore, the affidavits of the private investigators at the other restaurants also clearly indicate that the Program was not just shown to private parties. Mr. Bentley's affidavit regarding the Youngstown restaurant states that, among other television screens, the Program was shown on a "small flat screen in [the] corner near [the] restaurant bar." Doc. 27-2, p. 1. Furthermore, Mr. Kacarab, in his affidavit, observed the Program displayed on three televisions in the bar and lounge area of the Bedford restaurant, and he watched twelve entire rounds of a preliminary fight before leaving. Doc. 27-3, p. 1.

Although all justifiable inferences are to be drawn in Defendants' favor, *see Anderson, 477 U.S at 255*, such an inference is not reasonable here because Defendants provide only an unsupported assertion that the showings of the Program were private. *See Celotex*, 477 U.S. at 324 (the non-moving party must "go beyond the pleadings" to prove the existence of an issue of material fact). J&J has shown that Defendants are liable under 47 U.S.C. §§ 553 and 605 and Defendants have not offered any affirmative evidence to defeat J&J's showing. Accordingly, J&J is entitled to summary judgment on the matter of liability.

    **B. Damages Under 47 U.S.C. § 605**

        **1. Statutory Damages**

Having established Defendants' liability, the Court now turns its attention to the matter of damages. A plaintiff cannot recover damages under both 47 U.S.C. §§ 553 and 605. *Joe Hand Promotions, Inc. v. Orim, Inc.*, No. 1:10-cv-00743, 2010 WL 3931108, at *2 (N.D. Ohio Oct. 5,

2010) ("Courts typically permit a claimant to recover under only one section."); *Joe Hand Promotions, Inc. v. RPM Management Co. LLC*, No. 2:09-cv-553, 2011 WL 1043560, at *3 (S.D. Ohio Mar. 18, 2011) ("When a defendant is liable under both 47 U.S.C. § 605 and 47 U.S.C. 553, [] the plaintiff may recover under only one section."). This is because the two sections at issue cover significantly different types of signal interception. *Cablevision of Michigan*, 27 F.3d 556 at *3 ("Despite their facial similarity, Sections 553 and 605(a) reach different conduct … Section 605(a) may be read as outlawing satellite signal piracy, while Section 553 bans only the theft of programming directly from a cable system."). In similar situations, courts in the Northern District of Ohio have consistently allowed a plaintiff to elect which statute it wishes to pursue damages under.[3] *See, e.g., Joe Hand Promotions, Inc. v. Fazio*, No. 5:11-cv-1955, 2012 WL 1036134, at *3 (N.D. Ohio Jan. 31, 2012) (Report and Recommendation adopted, 2012 WL 1035886); *J & J Sports Productions, Inc. v. Ortiz*, No. 3:10-cv-2027, 2011 WL 3111878, at *1 (N.D. Ohio July 26, 2011).

J&J elected to recover statutory damages under 47 U.S.C. § 605 instead of actual damages. Doc. 27, p. 7-8. 47 U.S.C. § 605(e)(3)(C)(i)(II) provides that a plaintiff "may recover an award of statutory damages for each violation … in a sum of not less than $1,000 or more than $10,000, as the court considers just." *See also Fazio*, 2012 WL 1036134 at *3 ("The amount of damages awarded pursuant to Section 605 rests within the sound discretion of the Court."). Statutory damages are generally calculated based on several factors, including the applicable licensing fee for the venue and various costs of investigation. *National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 918 (6th Cir. 2001); *Joe Hand Promotions, Inc. v. Potopsky*, No. 1:10-cv-1474, 2011 WL 2648610, at *4 (N.D. Ohio Jul. 6, 2011) ("When

---

[3] As a practical matter, the Court notes that the award of damages in the present case would be the same under either § 553 or § 605.

7

determining an appropriate award of principal statutory damages, courts may consider the price a defendant would have had to pay to obtain the right to receive and display a broadcast.").

In its motion for summary judgment, J&J requests full statutory damages of $10,000 per violation.  Doc. 27, p. 14.  The Court finds such an award unreasonable.  J&J has only established the licensing fees Defendants would have had to pay had they properly licensed the Program (Doc. 27-6 (Licensing Fee Rate Card)); it has not provided any information regarding its costs of investigation.  With respect to a licensing fee, Serafina would have had to pay $2,200 for a licensing fee for its Bedford restaurant, with a capacity of 100 people.  Doc. 27-3 (Kacarab's Bedford affidavit asserting a 100-person capacity); 27-6 (Licensing Fee Rate Card setting forth licensing fees based on the maximum capacity of establishments). Serafina would have paid $8,200 for a licensing fee for its Youngstown restaurant, with a capacity of 350-500 people.  Doc. 27-2 (Bentley's Youngstown Affidavit asserting a capacity for 350-500 people); 27-6 (Licensing Fee Rate Card).  Zama would have paid $8,200 for a licensing fee for its Struthers restaurant, with a capacity of 375 people.  Doc. 27-1 (Bentley's Struthers affidavit); 27-6 (Licensing Fee Rate Card).

Accordingly, based on the evidence submitted, the Court grants J&J statutory damages based on what would have been a proper licensing fee—$10,400 in damages from Serafina for total violations at its Bedford and Youngstown restaurants and $8,200 in damages from Zama for its violation at the Struthers restaurant.

### 2. Enhanced Damages

J&J seeks enhanced damages for Defendants' violations of 47 U.S.C. § 605.  Under § 605(e)(3)(C)(ii), enhanced damages may be granted when "the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private

8

financial gain." A court may, in its discretion, "increase the award of damages … by an amount of not more than $100,000 for each violation." While the presence of a cover charge, increased prices, advertising, and occupancy relative to maximum capacity of establishments are factors frequently considered by courts when determining whether infringement is willful under § 605, and thus subject to enhanced damages, the absence of these factors is not determinative of whether infringement is willful when other factors are relevant. *RPM Management Co. LLC,* 2011 WL 5389425, at *4 (considering the number of televisions displaying a fight, as well as previous violations and the nature of the establishment as a sports bar when determining whether infringement is willful).

    Here, Defendants' conduct was clearly willful. The Program was shown on multiple televisions at three restaurants and was readily visible to the public. Furthermore, the locations of the televisions showing the Program make the willful nature of the violations clearer. Each restaurant showed the Program in locations easily visible to the public. Doc. 27-1, p. 1 (Bentley's Struthers affidavit, observing the Program on two televisions above an upstairs serving bar); Doc 27-2, p. 1 (Bentley's Youngstown affidavit, observing the Program on a "small flat screen in [the] corner near [the] restaurant bar," among other locations); Doc. 27-3, p. 1 (Kacarab's Bedford affidavit, observing the program on three televisions in the bar and lounge area). Defendants have not submitted evidence, *via* affidavit or otherwise, that they believed that they lawfully exhibited the Program to the patrons of their restaurants. In fact, the presence of multiple violations shows that the violations were willful. While there is no evidence that Defendants charged a cover fee, raised the prices of food or drink, advertised showing the Program, or that the restaurants were filled to capacity, the fights were shown on numerous televisions at each of the three Los Gallos Mexican Restaurants. Furthermore, the deterrent

9

effect of any award must be considered when determining whether to award enhanced damages. *Fazio*, 2012 WL 1036134 at *3; *Potopsky*, 2011 WL 2648610 at *4. Courts often note that requiring defendants to pay the original licensing fee "does nothing to accomplish this [deterrent] objective of the statute." *J & J Sports Productions, Inc. v. Palumbo*, No. 4:12-cv-2091, 2012 WL 6861507, at *3 (N.D. Ohio Dec. 12, 2012) (Report and Recommendation adopted, 2013 WL 162489). As such, due to the seriousness of violations on multiple television sets at three restaurants, the Court finds that enhanced damages are appropriate. Given the circumstances, an enhanced damages award of double or triple the statutory damages award would not be just, considering the absence of a cover charge, increased food and drink prices, and advertising, along with the relatively low occupancy of the restaurants. Accordingly, the Court awards J&J enhanced damages in an amount equal to the statutory damages: $10,400 in enhanced damages from Serafina and $8,200 in enhanced damages from Zama. *See id*. (awarding enhanced damages twice the statutory damages as a deterrent).

### 3. Costs and Attorneys' Fees

J&J has requested costs and attorneys' fees under 47 U.S.C. § 605(e)(3)(B)(iii). Section 605 provides that a court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." At the present time, J&J has not submitted an affidavit detailing its costs and attorneys' fees. Accordingly, if it still wishes to recover costs and fees, J&J is directed to submit an affidavit to the Court detailing its costs and fees.

### B. Ohio Conversion Claim

J&J has not moved for summary judgment on its conversion claim brought under Ohio law. Federal law provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are

so related to claims in the action within such original jurisdiction that they form part of the same case or controversy…" 28 U.S.C. §1367(a). When a claim "raises a novel or complex issue of State law," a district court may decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(1). As the Sixth Circuit noted, "[a] trial court must balance the interests in avoiding needless state law decisions … against the 'commonsense' policies of judicial economy … when deciding whether to resolve a pendent state claim on the merits." *Province v. Cleveland Press Pub. Co.*, 787 F.2d 1047, 1055 (6th Cir. 1986) (discussing *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and *Rosado v. Wyman*, 397 U.S. 397 (1970)); s*ee also James v. Hampton*, 592 Fed. App'x 449 (6th Cir. 2015) (holding that it was "reasonable for the district court to conclude that a novel and complex state law issue made the exercise of its jurisdiction over [the plaintiff's] state law claims unwise."); *United Mine Workers of America*, 383 U.S. at 726 ("[Pendent jurisdiction] need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.")

It is not settled Ohio law that unauthorized interception and exhibition of a television broadcast constitutes conversion. *See Joe Hand Promotions, Inc. v. WCI, Inc.*, No. 3:10-cv-422, 2011 WL 6755935, at *4. In Ohio, conversion is "a wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Zacchini v. Scripps-Howard Broadcasting Co.*, 351 N.E.2d 454, 456 (Ohio 1976), reversed and remanded on other grounds, 429 U.S. 562 (1977); *see also Schafer v. RMS Realty*, 741 N.E.2d 155, 182-184 (Ohio Ct. App. 2000) (discussing the tort of conversion under Ohio law, *Zacchini*, and its applicability to intangible rights). Conversion does not only apply to tangible property, but has also been extended to cover "intangible rights which

are customarily merged in or identified with some document," such as "drafts, bank passbooks, and deeds." *Zacchini*, 351 N.E.2d at 457. Nevertheless, it is unclear whether such intangible rights under Ohio law include television programs. *See WCI, Inc.*, 2011 WL 6755935 at *4-5 (declining to exercise supplemental jurisdiction over an Ohio conversion claim due to, in part, an "apparently undecided issue of state law.").

Considering the novel issues of Ohio law, as well as the lack of other pending issues, the Court declines to exercise supplemental jurisdiction over J&J's conversion claim and dismisses it without prejudice. *See id*. at *5 (dismissing claim without prejudice when declining to exercise supplemental jurisdiction).

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** J&J's motion for summary judgment on its claims under 47 U.S.C. §§ 553 and 605. The Court awards J&J $20,800 in statutory and enhanced damages from Serafina and $16,400 in statutory and enhanced damages from Zama.

The Court declines to exercise supplemental jurisdiction over J&J's conversion claim; the claim is **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED.

Dated: June 12, 2015

Kathleen B. Burke
United States Magistrate Judge